IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VINCENT D. BUTTERS**, | Case No. 3:22-cv-726-SB |
| Plaintiff, | **ORDER** |
| v. | |
| **TRAVELERS INDEMNITY COMPANY**, | |
| Defendant. | |

Vincent D. Butters, Plaintiff, *pro se*.

David J. Ryan and Bryce J.Q. Adams, BULLIVANT HOUSER BAILEY PC, One SW Columbia Street, Suite 800, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Vincent D. Butters (Butters), representing himself, has sued Travelers Indemnity Company (Travelers). On January 23, 2023, U.S. Magistrate Judge Stacie F. Beckerman issued Findings and Recommendation (F&R), recommending that the Court: (1) deny Travelers' motion to dismiss Butters' First Amended Complaint;[1] (2) grant Butters' motion for leave to file a Second Amended Complaint; and (3) grant in part and deny in part Travelers' motion to dismiss

---

[1] Travelers filed its motion against Butters' original Complaint. While the motion was pending, Butters filed a First Amended Complaint. The parties and Judge Beckerman then treated the motion as directed against the First Amended Complaint.

PAGE 1 – ORDER

Butters' proposed Second Amended Complaint. For the reasons discussed below, the Court adopts the F&R in part.

## STANDARDS OF REVIEW

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Federal Rule of Civil Procedure 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

## DISCUSSION

Travelers agrees with the procedural approach of allowing Butters to file a Second Amended Complaint and then treating Travelers' substantive challenges as a motion to dismiss that pleading. The F&R recommends that the Court deny Travelers' motion to dismiss with respect to Butters' claims of negligence *per se*, intentional infliction of emotional distress (IIED),

and fraudulent misrepresentation. The F&R also notes that Butters may be able to recover punitive damages for his tort claims of negligence *per se*, intentional infliction of emotional distress, and fraudulent misrepresentation. Travelers objected. The F&R also recommends that the Court grant Travelers' motion to dismiss Butters' breach of contract claim, to which Butters objected.

### A.  Negligence *per se*

The F&R recommends that the Court deny Travelers' motion to dismiss Butters' negligence *per se* claim. Travelers argues that the F&R misapplies Oregon law in three ways. First, Travelers argues that the F&R errs in relying on a recent and, according to Travelers, incorrectly decided decision from the Oregon Court of Appeals that allowed a negligence *per se* claim to proceed against an insurer. *See Moody v. Or. Cmty. Credit Union*, 317 Or. App. 233 (2022).[2] Travelers states that the Oregon Court of Appeals in *Moody* reached a decision that conflicts with the Oregon Supreme Court's earlier opinion in *Farris v. United States Fidelity and Guaranty Company*, 284 Or. 453 (1978), and, thus, this Court should disregard *Moody*. *See, e.g.*, *Runyan v. Foremost Ins. Co.*, Case No. 6:21-cv-1341-MC, Opinion & Order at 3 (D. Or. Oct. 26, 2022) ("While the *Moody* court asserts that they are answering a different question [than *Farris*], it appears to overturn 40 years of precedent. Until the Oregon Supreme Court rules otherwise, negligence *per se* is unavailable as a cause of action for insurance contract disputes." (citation omitted)) (available at ECF 41-1). The F&R concludes that *Moody* and *Farris* do not clash, however, and agrees with the decision of the Court of Appeals in that case. *See Moody*, 317 Or.

---

[2] The Oregon Supreme Court has since granted review of this decision. 369 Or. 855 (2022). The Oregon Supreme Court heard oral arguments on November 17, 2022, and a decision is pending.

App. at 244 ("*Farris*, in other words, is not relevant here."). The Court adopts the F&R's reasoning and applies *Moody* to Butters' claim of negligence *per se*.

Second, Travelers contends that property insurance disputes "sound only in contract," not in tort, and thus do not give rise to the sort of "standard of care independent of the contract terms" that a negligence *per se* claim requires. *Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 335 (2002). The F&R addresses how *Strader* does not conflict with *Moody*. The plaintiffs in *Strader* ground their tort claims on "precisely the same conduct that they identify as the breach of contract," *id.* at 332, but the plaintiff in *Moody* distinguished the basis of her breach of contract claim from that of her tortious conduct claims, *Moody*, 317 Or. App. at 236. The Court agrees with the F&R in finding that *Moody* and not *Strader* is the proper precedent to follow in these circumstances. The Court also agrees with the F&R's finding that Butters' claims would not fail under *Strader* regardless of the Oregon Supreme Court's ultimate decision in *Moody*.

Third, Travelers asserts that regardless of whether *Moody* or *Strader* applies, Butters fails to allege facts sufficient plausibly to show a "physical impact."[3] *See Hammond v. Cent. Lane Commc'ns Ctr.*, 312 Or. 17, 23-24 (1991). As Travelers observes, courts in Oregon have consistently "rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury." *Paul v. Providence Health Sys.-Or.*, 351 Or. 587, 597 (2012). This is known as the "physical impact rule." It has three exceptions, however. They are:

---

[3] Travelers raises this argument for the first time in its objection to the F&R. It is within this Court's discretion whether to accept new argument submitted with objections. *See Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (discussing the district court's discretion to consider new arguments raised in objections); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) (rejecting the Fourth Circuit's requirement that a district court *must* consider new arguments raised in objections to a magistrate judge's findings and recommendation). The Court exercises its discretion and addresses Travelers' new argument.

PAGE 4 – ORDER

> First, where the defendant intended to inflict severe emotional distress. Second, where the defendant intended to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself. Third, where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress, even when that conduct was only negligent.

*Hammond*, 312 Or. at 22-23 (citations omitted). Travelers argues that none of these exceptions apply, and that Butters' claim fails regardless of the applicability of *Moody*. *See Bryant v. Allstate Indem. Co.*, 2022 WL 1910128, at *3 (D. Or. June 3, 2022) (dismissing a plaintiff's negligence *per se* claim against an insurer in the aftermath of *Moody* because the allegations failed to satisfy the physical impact rule or a *Hammond* exception).

Butters does not respond to this argument from Travelers. In his Second Amended Complaint, however, Butters alleges that he suffered physical symptoms from chronic stress—including increased heart rate and blood pressure, weight loss, alopecia, and eczema—because of Travelers' conduct. ECF 22-1 at 5-6. "Generally, a person cannot recover for negligent infliction of emotional distress if the person is not also physically injured, threatened with physical injury, or *physically impacted by the tortious conduct*." *Lockett v. Hill*, 182 Or. App. 377, 380 (2002) (emphasis added). "Neither the Supreme Court nor [the Oregon Court of Appeals] have sought to define the minimum amount of bodily harm necessary to constitute physical impact." *Chouinard v. Health Ventures*, 179 Or. App. 507, 514 (2002); *see also Simons v. Beard*, 188 Or. App. 370, 378 n.6 (2003) (explaining how a directed verdict in favor of the defendants was appropriate in *Chouinard* when "there was no evidence of a 'perceptible physical effect' on the plaintiff as a result of the defendants' alleged negligence"). Here, Butters alleges that he has suffered tangible physical injury from the stress induced by Travelers' purported negligence. Butters therefore satisfies the physical impact rule on a motion to dismiss. The objection from Travelers on this

point does not prevent the Court from adopting the F&R's recommendation to deny Travelers' motion to dismiss the negligence *per se* claim.

## B. Intentional Infliction of Emotional Distress

To state an IIED claim in Oregon, Butters must allege that Travelers' conduct qualified as an "extraordinary transgression of the bounds of socially tolerable conduct." *Babick v. Or. Arena Corp.*, 333 Or. 401, 412 (2002) (quotation marks omitted). Travelers contends that courts in Oregon have determined that insurance coverage disputes lie within the bounds of socially acceptable behavior *as a matter of law*, and so the F&R errs in applying a "reasonable minds could differ" standard to transform that dispute into a question of fact. *See Conroy v. Mewshaw*, 2022 WL 2981453, at *6 (D. Or. July 28, 2022).

The cases that Travelers cites for this proposition do not go quite so far. *See, e.g.*, *Rossi v. State Farm Mut. Auto. Ins. Co.*, 90 Or. App. 589, 591 (1988), *rev. den.*, 306 Or. 414 (1988) ("[Plaintiff's] allegations show nothing more than a *typical disagreement* between an insurer and an insured over the existence of compensable events and the amount of compensation." (emphasis added)); *State Farm Mut. Auto. Ins. Co. v. Berg*, 70 Or. App. 410, 418 (1984) (affirming the dismissal of Berg's emotional distress claim because an alleged "difference of opinion as to the meaning and application of the terms of a contract could rarely, if ever, amount to outrageous conduct," not because the dispute dealt with insurance coverage). Indeed, one case that Travelers relies on recognizes this point. *See Allstate Ins. Co. v. Breeden*, 2007 WL 4480759, at *10 (D. Or. Dec. 17, 2007) ("On the other hand, not all activity of an insurer in determining whether to pay a claim is appropriate."). Thus, contrary to Travelers' argument, "Oregon law is not 'reluctant' to recognize the tort of outrageous conduct when the facts of the case so indicate, whether or not the defendant is an insurance company." *Green v. State Farm Fire & Cas. Co.*, 667 F.2d 22, 23 (9th Cir. 1982).

PAGE 6 – ORDER

Nevertheless, Butters fails plausibly to allege facts sufficient to state his claim of IIED. "A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *House v. Hicks*, 218 Or. App. 348, 358 (2008). Butters does not plausibly allege facts in support of his conclusory allegations that Travelers asked Butters to commit insurance fraud, punished him for refusing to do so, stalled his payments,[4] knowingly created inaccurate insurance documents, or harassed him through an unwarranted fraud investigation or otherwise. Butters' allegations at most depict a stressful insurance dispute, not an *intentionally* emotionally harmful one. The Court grants Travelers' motion to dismiss Butters' claim of IIED.

C. Fraudulent Misrepresentation

The F&R recommends that the Court deny Travelers' motion to dismiss Butters' claim of fraudulent misrepresentation. Travelers objects, contending that the F&R fails to hold Butters to the appropriate standard for fraud claims that are based only on acts of reckless disregard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (emphasis added)); *Webb v. Clark*, 274 Or. 387, 393 n.2 (1976) ("Fraud can never be predicated upon a promise to do something in the future

---

[4] As for Butters' allegation that Travelers stalled insurance payments, the First Amended Complaint alleges that Travelers paid Butters $224,235.70 for his dwelling within six weeks of the fire that destroyed Butters' house. For the contents, Butters alleges that Travelers paid $14,397.72 to Butters' husband for personal property non-salvage efforts within a few weeks and made another personal property partial payment three months after the fire in April, while the parties were disputing the type and value of the contents. The parties' subsequent status reports reflect that Travelers paid the contents policy limits—in full—three months later in July, although Butters disputes the $14,397.72 paid directly to his husband. Given Travelers' ongoing payments, including while Travelers was asking for supporting documentation from Butters, Butters' allegations are insufficient to show intentional stalling.

unless it is alleged and proven that, at the time of the making of the promise, there was no present intention of performance or, alternatively, that the promise was made with *reckless disregard* as to whether the promissor could or could not perform." (emphasis added)); *see also Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machs. Corp.*, 260 F. Supp. 3d 1345, 1383-84 (D. Or. 2017) (citing *Webb*).

Travelers relies on a decision in this district holding that a "claim of reckless misrepresentation requires 'some showing of systematic or otherwise aggravated conduct evincing a high degree of social irresponsibility.'" *Ironwood Homes, Inc. v. Bowen*, 719 F. Supp. 2d 1277, 1287 (D. Or. 2010) (quoting *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 140 (1984)). The Oregon Supreme Court case that *Ironwood* quotes for this proposition, however, holds that such a showing was needed "to sustain the award of *punitive damages*," not the underlying claim. *Weigel*, 298 Or. at 140 (emphasis added).

In *Weigel*, the Oregon Supreme Court differentiated the requirements for punitive damages based on a reckless misrepresentation and the underlying tort itself, explaining:

> It does not follow, however, that in every case of reckless misrepresentation the question of punitive damages may be submitted to the jury. We dealt with that issue in *Schmidt v. Pine Tree Land Development*, 291 Or. 462, 631 P.2d 1373 (1981). . . . We noted that the function of punitive damages in penalizing harmful acts done with bad motives differed from their function in deterring enterprises from "accepting the risks of harm to other private or public interests by recklessly substandard methods of operation at the cost of paying economic compensation to those who come forward to claim it." 291 Or. at 466. But we stated that to justify punitive damages such a method of operation
>
>> "must go beyond mere carelessness to a willful or reckless disregard of risk of harm to others of a magnitude evincing a high degree of social irresponsibility. In such a setting the plaintiff whose economic loss may be insignificant to the enterprise and perhaps too small to justify the expenses of pressing a claim represents social interests larger than his own." *Id.*

> That also is the theory of civil recovery under the Unlawful Trade Practices Act. The act includes under "willful violations" those in which the person committing the violation should have known that his conduct was a violation, but this court has interpreted the act as not allowing punitive damages for reckless but unintentional violations that do not meet this standard of aggravated social irresponsibility.

*Weigel*, 298 Or. at 138-39. The Court disagrees with both *Ironwood* and Travelers' assertion that for torts involving reckless misrepresentation, as opposed to a claim for punitive damages, Oregon law requires a showing of systematic or aggravated social irresponsibility.

Additionally, the Oregon Supreme Court in *Weigel* does *not*, as Travelers asserts, hold that Oregon follows South Carolina's test in *Young v. Goodyear Service*, 137 S.E.2d 578, 581-82 (Sup. Ct. S.C. 1964), for fraudulent misrepresentation based on a theory of recklessly disregarding the truth. *Weigel* is the only Oregon case that cites *Young*. Further, it does so only as additional support along with a citation to *Otte v. Ron Tonkin Chevrolet Co.*, 264 Or. 265, 274-75 (1972), for the proposition that recklessness may suffice for a finding of punitive damages when a plaintiff proves a claim of false representation. *Weigel*, 298 Or. at 138.

There appears to be no precise formulation in Oregon to determine whether a party's conduct was reckless enough to satisfy the intent element for fraudulent misrepresentation under a theory of reckless disregard. Circumstances suggesting reckless disregard, however, can be found "where representations are made by one who is conscious that he has no sufficient basis of information to justify them." *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 406 (1987). For example, the Oregon Supreme Court noted that a jury could find reckless disregard when a college repeatedly told a student that materials he required were "on order" and "will be here," despite a professor commenting that "'the stuff' had been on order for approximately three years." *Dizick v. Umpqua Cmty. College*, 287 Or. 303, 406 (1979).

The Oregon Supreme Court also concluded that reckless disregard could be found in a case of misrepresentations when a medical foundation offered a job to a foreign doctor but withheld the fact that the program supporting this job was almost certainly ending. *See Elizaga v. Kaiser Found. Hosps., Inc.*, 259 Or. 542, 548 (1971). The Oregon Court of Appeals upheld a finding of reckless disregard when the defendant "took affirmative actions both before and after his many representations and assurances that were completely inconsistent with the intentions expressed and the assurances given by him to plaintiff," namely that "if plaintiff came to work for the family business at a low salary, he would be earning an interest in the business," among other claims. *Hocks v. Hocks*, 95 Or. App. 40, 44 (1989). More recently, the Oregon Court of Appeals upheld a claim of reckless disregard when a developer's attorney drafted an agreement containing misrepresentations "with reckless disregard of the falsity of the representation in the hopes that plaintiffs would agree to invest." *Cruze v. Hudler*, 246 Or. App. 649, 660 (2011). Contrary to Travelers' argument, courts in Oregon assess whether the facts or allegations can give rise to a reasonable inference of reckless disregard of the truth of a party's representation on a case-by-case basis.

Here, Butters alleges that Travelers represented that Butters' damaged property could not be salvaged and told Butters that he could throw these items away. Butters alleges that Travelers paid for Butters' "non-salvage activities" that same day and that he relied on Travelers' representation by disposing of his damaged property. Butters further alleges that Travelers made this representation without examining the contents of Butters' inventory in person. Butters also alleges that at least several weeks later, Travelers sent Butters a letter stating that Travelers wanted to walk through Butters' house and examine his now-disposed-of inventory to determine whether anything could be salvaged or cleaned, rather than rely on the inventory spreadsheet that Butters had provided. Butters claims that Travelers acted in reckless disregard by

PAGE 10 – ORDER

misrepresenting that Butters could not salvage his damaged property, as shown in part by Travelers paying Butters to remove that property but later requesting an in-person assessment. As the F&R explains, accepting these allegations as true and viewing them in the light most favorable to Butters, these allegations are sufficient reasonably to imply that Travelers' claims adjuster made promises related to Butters' property disposal and payment with reckless disregard as to what more information Travelers might need from Butters to fulfill its contractual obligations. The Court adopts the F&R's recommendation and denies Travelers' motion to dismiss Butters' claim of fraudulent misrepresentation based on a theory of reckless disregard.

### D.  Punitive Damages

Butters seeks punitive damages for his tort claims of negligence *per se*, IIED, and fraudulent representation, in the amount of four times the total value of his insurance policy. Travelers moves to dismiss this request because Butters fails to allege facts that would allow him to recover punitive damages as a matter of law. The Court does not address arguments for or against the availability of punitive damages for Butters' IIED claim, as the Court grants Travelers' motion to dismiss that claim.

"The aim of punitive damages, as of punishment in other contexts, may be to deter the defendant, or to deter others, or to reaffirm and vindicate social norms for their own sake even when the efficacy of deterrence is doubtful." *Andor by Affatigato v. United Air Lines, Inc.*, 303 Or. 505, 511 (1987). Punitive damages generally are "a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others." *Id.* at 517. They may arise in a "wide range of situations," from "giving vent to personal and societal outrage at aggressive or malicious wrongdoing" to deterring "enterprises from accepting the risks of harming other private or public interests by recklessly substandard methods of operation." *Schmidt*, 291 Or. at 466. "The prerequisite for imposition of

PAGE 11 – ORDER

punitive damages is a degree of culpability greater than inattention or simple negligence." *Badger v. Paulson Inv. Co., Inc.*, 311 Or. 14, 28 (1991). In Oregon, "[p]unitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Or. Rev. Stat. § 31.730(1).

Butters received a policy limits payment for his dwelling coverage within six weeks of the fire that damaged his house. Butters and his husband also received three payments over six months totaling the policy limits for his personal property coverage. Butters alleges that Travelers sent forms late, delayed approving the proof-of-loss spreadsheet for his personal property, took several months to pay out the property insurance claim, and requested duplicative paperwork on that claim. Even when taken as true and viewed in the light most favorable to Butters, these factual allegations do not show an extraordinary violation of social norms or recklessly substandard methods of operation that would justify punitive damages for Butters' negligence *per se* claim.[5]

---

[5] "Conventionally, simple negligence cannot support an award of punitive damages . . ." *Georgetown Realty, Inc. v. The Home Ins. Co.*, 113 Or. App. 641, 645 (1992), *rev. den.* 316 Or. 528 (1993). Oregon courts have held, however, that punitive damages may be available "where the requisite showing of aggravated misconduct is made, notwithstanding that the lesser showing of ordinary negligence would suffice to establish tort liability." *Boger v. Norris & Stevens, Inc.*, 109 Or. App. 90, 94-95 (1991), *rev. den.* 312 Or. 588 (1992); *see Georgetown Realty*, 133 Or. App. at 645 (citing *Boger* for this proposition); *see also Jane Doe 130 v. Archdiocese of Portland in Or.*, 717 F. Supp. 2d 1120, 1140 (2010) (D. Or. 2010) ("Although it is clear under Oregon law that simple negligence, without more, cannot support an award of punitive damages, where the evidentiary record supports findings of *both* negligence *and* the additional factors of aggravated misconduct requisite for award of punitive damages, a punitive damages award may lie in connection with a negligence claim." (emphasis in original)); *Wilson v. Tobiassen*, 97 Or. App. 527, 533 (1989) ("Our decision to reverse the judgment for punitive damages is not based on plaintiff's legal inability to bring a claim for punitive damages in a case of this kind, but merely

As for his claim of fraudulent misrepresentation, Butters alleges that a Travelers representative acted recklessly in telling Butters that he could dispose of his damaged property, then later requesting photographs of that property for valuation. These allegations also do not "go beyond mere carelessness to a willful or reckless disregard of risk of harm to others of a magnitude evincing a high degree of social irresponsibility." *Andor*, 303 Or. at 509. Butters' allegations do not plausibly rise to the level of systematic or aggravated social irresponsibility that is required under Oregon law to support punitive damages for alleged reckless misrepresentations. The Court grants Travelers' motion to dismiss Butters' request for punitive damages.

### E.  Breach of Contract

Finally, the F&R recommends that the Court grant Travelers' motion to dismiss Butters' claim of breach of contract for failure to state a claim. Butters argues that Travelers breached its contract with Butters by issuing a check for unsalvageable cleanup costs to Butters' husband, a named insured, whom Butters contends was unaware of that money's source and purpose.[6] Butters, however, identifies no contractual provisions that he asserts were materially breached. The Court adopts the F&R's recommendation to grant Travelers' motion to dismiss Butters' claim of breach of contract.

---

on the insufficiency of the evidence at trial to submit that claim [of negligent infliction of emotional distress] to the jury.")

[6] Butters submits a copy of his Homeowners Policy Declarations page, which lists the named insured as "Jeffrey H. Butters & Vincent Dorrough Butters." Butters argues that his husband is not a named insured because the heading on this declarations page is singular, not plural. Regardless of whether the heading is plural or singular, Butters' husband is included as a named insured. Also, "insured" often is defined in insurance policies as encompassing both singular and plural.

## CONCLUSION

The Court ADOPTS IN PART the Findings and Recommendation. ECF 38. The Court DENIES Defendant's initial motion to dismiss. ECF 5. The Court GRANTS Plaintiff's motion for leave to amend. ECF 22. The Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss. ECF 26. The Court dismisses Plaintiff's claims for intentional infliction of emotional distress and breach of contract and Plaintiff's request for punitive damages based on negligence *per se* and fraudulent misrepresentation by reckless disregard.

**IT IS SO ORDERED.**

DATED this 18th day of May, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge